## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF NEBRASKA

MICHELLE NICKLAS;                    )          Case No.
JOHN ROES (1-50);                    )
JANE ROES (1-50),                    )
                                     )
                    Plaintiffs,      )
                                     )
          vs.                        )
                                     )          Class Action
JOE KELLY, individually              )
And in his official capacity,        )
As the LANCASTER                     )
COUNTY ATTORNEY; AND                 )
JOHN DOES (1-50), individually and   )
in his/her/ their official capacity. )
                                     )
                    Defendants.      )

### CLASS ACTION COMPLAINT

1.   Plaintiff(s), by and through counsel, Chad J. Wythers, on behalf of

     themselves and others similarly situated, and for their Complaint against

     the Defendant, Lancaster County Attorney's Office, Joe Kelly, individually

     and in his official capacity as the Lancaster County Attorney, and John or

     Jane Does, individually and in his/her/their official capacities.

2.   This is a class action lawsuit brought on behalf of individuals similarly

     situated against the Lancaster County Attorney's Office, Joe Kelly,

     individually and in his official capacity, to secure a remedy for damages to

     the Plaintiff(s) and other persons similarly situated whose Fifth and

     Fourteenth Amendment rights were violated after they were charged with

crimes in Lancaster County, paid money to enroll in a "pretrial diversions program" with the hope that his/her/their charges would be dismissed, and were subsequently denied entry after having paid money to enroll in the program, and other unlawful activities in violation of 42 U.S.C. § 1983; 42 U.S.C. 1981; the Fourteenth Amendments to the United States Constitution and the Constitution of the State of Nebraska.

## JURISDICTION AND VENUE

3.    This action arises under the United States Constitution, particularly under the Fifth and Fourteenth Amendments, under federal law, particularly the Civil Rights Act of 1871 (42 U.S.C. § 1983), and the laws of the State of Nebraska.  This honorable court has jurisdiction by virtue of 28 U.S.C. §§ 1331 and 1367.

4.    Venue is founded in this court upon 28 U.S.C. § 1391 as the acts of which Plaintiff(s) complain arose in this district.

## PARTIES

5.    Plaintiff, Michelle Nicklas, is a resident of Lancaster County, Nebraska.

6.    John and Jane Roes (1-50) are unknown Plaintiffs who have similar causes of action as pled herein by the Plaintiff, Michelle Nicklas.

7.    Defendant Lancaster County Attorney's Office, hereafter referred to as "County Attorney," is an agency of Lancaster County, Nebraska, and prosecutes felony and misdemeanor crimes under Nebraska Law for

Lancaster County, Nebraska as well as advises county agencies and
defends suits brought against Lancaster County, Nebraska.

8.     Defendant Joe Kelly, hereafter referred to as "Kelly," is the duly elected
County Attorney for Lancaster County, Nebraska, and by serving in this
professional capacity is responsible for the administration and execution of
the duties of the County Attorney.

9.     At all relevant times, Joe Kelly, individually and in his official capacity, had
the final policy-making authority in terms of creating, adopting,
implementing and/or enforcing policies in the Lancaster County Attorney's
Office.

10.    John and Jane Does (1-50) are unknown employees of the Lancaster
County Attorney's Office who were involved in the allegations set forth
herein.

## General Background Facts

11.    Lancaster County has several programs designed to help people charged
with misdemeanor or felony crimes avoid the possibility of conviction.

12.    One such program is called the Lancaster County Community Corrections
Diversions Program (herein after "Diversions").

13.    The Diversions Program was created and is managed by the Lancaster
County Attorney through an office called Lancaster County Community
Corrections.

14.    The Diversions Program provides a fantastic opportunity for people
charged with a crime to resolve a criminal charge without going through
the trial process, and the citizens of Lancaster County are fortunate to
have such opportunities provided by the Lancaster County Attorney's
Office.

15.    Many people who have been charged with a misdemeanor or felony have
had their criminal charges dismissed completely because of the very
existence of Diversions.

16.    Persons charged with a misdemeanor or felony who participate in the
program are required to do things such as community service, obtain a
drug and alcohol evaluation, write a letter of apology, pay restitution or any
other affirmative acts which are required of the program for the particular
individual.

17.    Attached hereto, labeled as "Exhibit A" and incorporated herein by this
reference is an informational webpage – from the Lancaster County
Attorney – which outlines some of the requirements of the Diversions
program.

18.    Attached hereto, labeled as "Exhibit B" and incorporated herein by this
reference is another informational webpage – from the Lancaster County
Attorney – which outlines the pretrial eligibility criteria for the diversions
program.

## FACTS PARTICULAR TO THIS CASE

19. On or about April 24, 2017, the Plaintiff, Michelle Nicklas, was charged in the County Court of Lancaster County with a class I misdemeanor, child neglect at case number CR17-5489.

20. On or about May 23, 2017, the Plaintiff, Michelle Nicklas, enrolled in the Lancaster County Community Corrections Diversions Program.

21. As part of the enrollment, the Plaintiff, Michelle Nicklas, paid a $200 fee and signed a contract entitled "Community Corrections Diversions Program Agreement".

22. Attached hereto, labeled as "Exhibit C" and incorporated herein by this reference is a copy of the "Community Corrections Diversions Program Agreement" (hereinafter, "Agreement").

23. On May 23, 2017, the Agreement was signed by the Plaintiff, Michelle Nicklas, and an agent or employee of Diversions.

24. On May 24, 2017, a deputy Lancaster County Attorney emailed undersigned counsel an email which stated, "The county attorney's office is denying diversions to Ms. Nicklas. Please see attached letter."

25. Attached hereto, labeled as "Exhibit D" and incorporated herein by this reference is a copy of the email.

26. Attached to the email was a generic letter dated May 25, 2017 which indicated the Ms. Nicklas was not eligible for the Diversions Program.

4:17-cv-03131-RGK-MDN     Doc # 1     Filed: 10/06/17     Page 6 of 38 - Page ID # 6

27.  The county attorney emailed the letter to undersigned counsel. The letter
     was not mailed or provided to Ms. Nicklas in any other manner.

28.  The letter does not contain the specific reasons for the denial as required
     by the Diversion rules (See, Exhibit B).

29.  As noted above, Ms. Nicklas paid the $200 enrollment fee as required by
     the Diversions rules. (See, Exhibit C).

30.  Throughout the months of May, June and July 2017, Ms. Nicklas continued
     to meet with the Diversions officer, who signed her Diversions agreement.

31.  Nothing within the agreement executed between Ms. Nicklas and the
     Diversions officer indicated that Ms. Nicklas was not admitted into the
     program or that the county attorney could deny her entry into the program.
     To the contrary, the agreement specifically notes that Ms. Nicklas'
     participation in the program is "voluntary" and that she "may withdraw at
     any time." (See, Exhibit C).

32.  Throughout the month of May, June and July 2017, Ms. Nicklas completed
     several terms of the Diversions Program as contemplated in the
     Agreement and as outlined in the Diversions Rules (See, Exhibit B and C).

33.  Ms. Nicklas completed every term required of her as contemplated within
     the Agreement (See, e.g., Exhibit C):

     a.  She obeyed all laws and hasn't been convicted of any new charges;

     b.  She maintained a residence in Nebraska;

c. She met with a staff member of Diversions regularly (in June and July, 2017);

d. She paid a program fee of two-hundred dollars ($200);

e. She attended all court hearings;

f. She completed 24 hours of community service (Attached hereto, labeled as "Exhibit E" and incorporated herein by this reference is a log of the community service hours completed and approved by Diversions officer, Jessica Schmidt); and

g. She completed a drug and alcohol education class (Attached hereto, labeled as "Exhibit F" and incorporated herein by this reference is a letter to Diversions indicating that Ms. Nicklas completed an alcohol education class).

34.   Despite meeting with Diversions employees in May, and June 2017, and participating in the Diversions Program with the knowledge of Diversions Staff, it was not until approximately July 17, 2017 that Ms. Nicklas was verbally informed by an employee of Diversions that she did not get accepted into the program.

35.   Ms. Nicklas' criminal case is scheduled to be heard before a jury in November 2017.

## RELEVANT LAW

36.    Federal Code 42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation,
>
> custom, or usage, of any State or Territory or the District of
>
> Columbia, subjects, or causes to be subjected, any citizen of the
>
> United States or other person within the jurisdiction thereof to the
>
> deprivation of any rights, privileges, or immunities secured by the
>
> Constitution and laws, shall be liable to the party injured in an action
>
> at law, suit in equity, or other proper proceeding for redress, ....

42 USCS § 1983 (2017).

37.    In this case, the Plaintiff(s) has/have several rights that have been violated,
including, but not limited to denial of due process and denial of equal
protection.

## Violation of Substantive Due Process

38.    The Plaintiff(s) was/were denied substantive due process guaranteed by the
United States Constitution and incorporated herein by the Fourteenth
Amendment.

39.    She/he/they were denied substantive due process considering she/he/they paid
money to the Lancaster County Diversions Program and has/have not gotten a
refund.

40.     In short, the Plaintiff(s) paid money and yet is/are/were still being denied entry into the program.

41.     An individual must have a constitutionally protected interest in life, liberty, or property in order for the protections of procedural due process to attach. *Singleton v. Cecil*, 176 F.3d 419, 424 (8th Cir. 1999) (en banc) (noting that "[t]he possession of a protected life, liberty, or property interest is . . . a condition precedent to any due process claim").

42.     Protected property interests range from welfare—"the very means by which to live," *Goldberg v. Kelly*, 397 U.S. 254, 264, 90 S. Ct. 1011, 25 L. Ed. 2d 287 (1970)—to an individual's personal items, such as a handgun and ammunition, *Walters*, 660 F.3d at 311.

43.     Due process protections, however, do not attach to all property. Instead, there exists "a *de minimis* level of imposition with which the Constitution is not concerned." *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996) (quoting *Bell v. Wolfish*, 441 U.S. 520, 539 n.21, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979)). "Only if we find a protected interest do we examine whether the deprivation of the protected interest was done in accordance with due process." *Forrester v. Bass*, 397 F.3d 1047, 1054 (8th Cir. 2005). Absent a protected interest, a procedural due process challenge must fail. *Id.*

44.     In this case, the Plaintiff, Michelle Nicklas, (and the other Plaintiffs) has/have a property interest in money she paid to the Lancaster County Diversions Program.

45.    The Plaintiff, Michelle Nicklas, also paid for the cost of a drug and alcohol
       evaluation at the bequest of the Diversions Program and she did volunteer work
       for the program.

46.    Other plaintiffs may have also paid for drug and alcohol evaluations or performed
       volunteer work at the bequest of the Diversions Program.

47.    Although she/they had/has paid money to be in the program (two-hundred
       dollars) ($200), the Plaintiff(s) was/were not accepted into the program and as
       such, she/he/they has/have been denied procedural due process.

48.    The Plaintiff in this case has not had her $200 refunded back to her. Lancaster
       County and the Defendants, still have her money.

49.    Other Plaintiffs may not have their money back.

### Procedural Due Process

50.    The Plaintiff(s) was/were also denied procedural due process as guaranteed by
       the United States Constitution and incorporated by the Fourteenth Amendment.

51.    As noted above, the rules provide that if a person is denied entry into the
       Diversions Program, he/she will receive an individualized determination to the
       reasons "why" the person was denied.

52.    As indicated previously, the letter provided to the Plaintiff, Michelle Nicklas,
       does not contain the specific reasons for the denial as required by the
       Diversion rules (See, Exhibit B, D).

53.    The failure to provide particularized reasons as required by the rules denies the
       Plaintiff(s) procedural due process.

## Equal Protection Claim

54.    Many people have gotten cited or arrested for crimes similar to the one(s) that
       the Plaintiff(s) was/were charged with.

55.    Many of those same people have been admitted into the Diversions Program.

56.    Despite the fact that other similarly situated persons have gotten into the
       Diversions Program, the Plaintiff, Michelle Nicklas, was supposedly denied entry.

57.    Other Plaintiffs have been denied entry into the Diversions Program even though
       other similarly situated people were admitted into the Diversions Program.

## Official Policy and Custom

58.    A local governmental body cannot be found liable under § 1983 on a
       *respondeat superior* theory; liability may be imposed only if the plaintiff
       establishes that his injuries were inflicted pursuant to an official county
       policy or custom. *See Monell*, 436 U.S. at 690-94. See, *Soltesz v.
       Rushmore Plaza Civic Ctr.*, 847 F.3d 941 (8th Cir. 2017) ( [M]unicipal
       liability under § 1983 attaches where . . . a deliberate choice to follow a
       course of action is made from among various alternatives by the official or
       officials responsible for establishing final policy with respect to the subject
       matter in question." *Pembaur, 475 U.S. at 483*. Thus a single decision by a
       municipal official can constitute official policy. *Bolderson v. City of
       Wentzville*, 840 F.3d 982, 985 (8th Cir. 2016). But "liability attaches only

were the decision-maker possesses final authority to establish
municipal policy with respect to the action ordered. *Id.*

59.   "Official municipal policy includes the decisions of a government's
      lawmakers, the acts of its policymaking officials, and practices so
      persistent and widespread as to practically have the force of law." *Connick
      v. Thompson*, 131 S. Ct. 1350, 1359 (2011).

60.   A policy "promulgated, adopted, or ratified by a local governmental entity's
      legislative body unquestionably satisfies *Monell*'s policy requirement."
      *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443 (9th Cir. 1989),
      *overruled on other grounds by Bull v. City & County of San Francisco*, 595
      F.3d 964 (9th Cir. 2010) (en banc).

61.   In this case, Defendant(s), individually and/or collectively, has/have
      engaged in an official policy and/or custom (e.g., a deliberate course of
      action) to violate the constitutional rights of the Plaintiff, Michelle Nicklas,
      and other similarly situated Plaintiffs by taking money from the Plaintiffs,
      depositing the money into the Lancaster County Treasury and then
      refusing to allow the Plaintiffs the benefits for which they paid money (e.g.,
      entry into the Lancaster County Diversions Program).

62.   Even if the Defendant(s) was/were to argue there was no official policy, a Plaintiff
      may establish liability upon a showing that there is a permanent and well-settled
      practice which gave rise to the alleged constitutional violation. *See City of St.
      Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).

63. Finally, Defendants may argue they didn't intend to violate the constitutional rights of the Plaintiff or every other person applying to the Lancaster County Diversions program; however, "[Section] 1983 . . . contains no state-of-mind requirement independent of that necessary to state a violation of the underlying constitutional right." *Daniels v. Williams*, 474 U.S. 327, 329-30 (1986).

## Causation

64. Causation issues in § 1983 actions are generally resolved according to common-law tort principles. See, e.g., *Martinez v. California*, 444 U.S. 277, 100 S. Ct. 553, 62 L. Ed. 2d 481 (1980) (citing *Grimm v. Arizona Bd. of Pardons & Paroles*, 115 Ariz. 260, 564 P.2d 1227 (1977), and *Palsgraf v. Long Island R. R. Co.*, 248 N.Y. 339, 162 N.E. 99 (1928)); *Ricketts v. City of Columbia, Missouri*, 36 F.3d 775 (8th Cir. 1994).

65. As a general matter, a proximate cause is defined as, "that cause which, in a natural and continuous sequence, without any efficient, intervening cause, produces the injury, and without which the injury would not have occurred. *Haselhorst v. State*, 240 Neb. 891, 899, 485 N.W.2d 180, 187 (1992).

66. So, ordinarily, a plaintiff must meet three basic requirements in establishing proximate cause: (1) that without the [misconduct], the injury would not have occurred, commonly known as the "but for" rule; (2) that the injury was a natural and probable result of the [misconduct]; and (3)

that there was no efficient intervening cause. *Amanda C. v. Case*, 275

Neb. 757, 749 N.W.2d 429 (2008).

67.    In this case, "but for" the unlawful and unconstitutional actions of the

Defendants, the Plaintiff(s) in this would not have paid money to the

Lancaster County Diversions Program, they would not have obtained drug

and alcohol evaluations, and they would not have performed volunteer

work in the local community.

68.    The injury (the loss of money and the inability to have her charges

dismissed) was a natural and probable result of the misconduct by the

Defendants.

69.    There was no intervening cause.

## Eleventh Amendment Immunity

70.    Under the Supremacy Clause of the United States Constitution, state laws or

actions violating federal law are invalid. U.S. Const. art. VI. *See Shaw v. Delta Air*

*Lines,* 463 U.S. 85, 96 n.14 (1983).

71.    Yet, the Eleventh Amendment of the Constitution provides states with immunity

from private suits.

72.    In 1974, the Supreme Court held in a case involving welfare rights that injunctive

and declaratory relief against state officials does not violate the Eleventh

Amendment, but that the Constitution prohibits retroactive monetary damages.

*Edelman v. Jordan*, 415 U.S. 651 (1974).

73.   Subsequent cases have reaffirmed the availability of injunctive relief against state officials for violations of safety net and civil rights statutes.

74.   Under *Ex parte Young*, private parties can sue state officials in their *official capacity* to enforce federal laws and regulations, but only for prospective injunctive and declaratory relief. Accordingly, there must be an ongoing violation of federal law to support prospective relief. Such relief may include notice to the plaintiff class of the availability of remedies under state law.

75.   No damages are recoverable in *Ex parte Young* suits, but prospective relief may require the incidental expenditure of state funds.

76.   State officials may be sued for damages in their *individual capacity* for violations of federal constitutional or statutory rights committed in the course of official duties but are entitled to claim qualified immunity. Qualified immunity bars recovery insofar as the official's conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

77.   The Supreme Court has set forth a two-part analysis for resolving government officials' qualified immunity claims. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part on other grounds by Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

   a. First, the court must consider whether the facts "[t]aken in the light most favorable to the party asserting the injury . . . show [that] the [defendant's] conduct violated a constitutional right[.]" *Saucier*, 533 U.S. at 201; *see also Scott v. Harris*, 550 U.S. 372, 377 (2007);

*Brosseau v. Haugen*, 543 U.S. 194, 197 (2004) (per curiam); *Hope v. Pelzer*, 536 U.S. 730, 736 (2002);

b. Second, the court must determine whether the right was clearly established at the time of the alleged violation. *Saucier*, 533 U.S. at 201; *Scott*, 550 U.S. at 377; *Brosseau*, 543 U.S. at 199-201; *Hope*, 536 U.S. at 739.

78. In this case, there was certainly an established constitutional due process and equal protection right for Ms. Nicklas (and other plaintiffs) and the right was clearly established at the time of the violation.

## FIRST CAUSE OF ACTION – DECLARATORY JUDGMENT

79. Plaintiff incorporates paragraphs 1 – 78 of Plaintiff's complaint herein by reference.

80. There exists a contract between Plaintiff(s) and Defendants. See attached Exhibit C. All the essential elements of a contract, namely offer, acceptance, and consideration, are present, making it a valid contract.

81. Other similarly situated Plaintiffs also possessed a valid contract.

82. Legal Rights. Plaintiff(s) has/have fulfilled her/his/their portion of the contract and is therefore entitled to have it declared that she/he/they has/have done her/his/their part.

83. Relief. Under *Ex parte Young*, private parties can sue state officials in their *official capacity* to enforce federal laws and regulations, but only for prospective injunctive and declaratory relief.

84.    Plaintiff(s) is/are entitled to a Declaratory Judgment stating that there exists a
       valid contract between her/him/them and the Defendants and that she/he/they
       has/have performed all of her/his/their obligations pursuant to said contract OR
       declaring that the Plaintiff(s) is/are, in fact, enrolled in the Diversions Program.

### SECOND CAUSE OF ACTION – INJUNCTIVE RELIEF

85.    Plaintiff incorporates paragraphs 1 – 84 of Plaintiff's complaint herein by
       reference.

86.    Elements. As has been shown, a binding legal contract exists between Plaintiff(s)
       and Defendants, namely that in exchange for Plaintiff(s) admission into
       Diversions, Defendants would dismiss the criminal case CR17-5489 (or each of
       the respective Defendants' criminal cases) in the County Court of Lancaster
       County, Nebraska. The facts of the instant case show that this/the contract(s)
       is/are definite and certain in its/their terms, mutual in obligation, and free from
       unfairness, fraud, or overreaching. The facts also show that the remedy at law is
       inadequate and specific performance will not be inequitable or unjust.

87.    No Adequate Remedy at Law. Plaintiff(s) has/have no adequate remedy at law
       as no amount of money damages awarded could compensate her/him/them for
       having a criminal conviction that will hurt her/his/their future business
       opportunities and destroy her/his/their reputation in the community. Furthermore,
       no amount of money damages awarded could compensate her/him/them for

possibility having to spend time in jail (for crimes in which imprisonment is a possibility).

88.   Specific Performance Will Not Be Inequitable or Unjust. An order of specific performance would not be inequitable or unjust in the instant case as the Defendants will not suffer a monetary harm or loss of reputation and will simply be complying with their contractual obligations and own policy regarding Diversions.

89.   Relief. Therefore, Plaintiff(s) is/are entitled to an order compelling Defendants to specifically perform their contractual obligations and dismiss the criminal case CR17-5489 in the County Court of Lancaster County, Nebraska (or any other pending criminal case for the other plaintiffs).

## Class Action Allegations

90.   The named Plaintiff(s) bring(s) this action, on behalf of himself, herself, and all others similarly situated, to assert the claims alleged in this Complaint on a common basis.

91.   The class would be made-up of all persons who have been denied entry into the Lancaster County Diversions Program without receiving the proper procedural or substantive due process and/or equal protection guaranteed to them by the United States Constitution and the Nebraska Constitution.

92.  A class action is a superior means, and the only practicable means, by which the named Plaintiff(s), and unknown Class Members, can challenge Defendants' ongoing constitutional violations.

93.  This action is brought, and may properly be maintained, as a Class action pursuant to Rule 23(a)(1)–(4) and Rule 23(b)(2) of the Federal Rules of Civil Procedure.

94.  This action satisfies the numerosity, commonality, typicality, and adequacy requirements of those provisions.

95.  Plaintiff proposes one Class seeking declaratory and injunctive relief. The Declaratory and Injunctive Class is defined as: all applicants to the Lancaster County Diversions program who paid money but did not get into the program and/or did not receive particularized reasons he or she was not accepted into the program (as required by the rules).

### Commonality — Fed. R. Civ. P. 23(a)(2)

96.  The relief sought is common to all Class Members, and common questions of law and fact exist as to all Class Members. The named Plaintiff seeks relief concerning whether the unconstitutional actions of the Defendants violate the rights of the Class Members and relief mandating that Defendants stop the unconstitutional actions in the future.

97.  These common legal and factual questions arise from one set of policies and practices: Defendants' unconstitutional acceptance of money and subsequent

denial of applicants into the Diversions Program. The material components of the facts do not vary from Class Member to Class Member, and the resolution of these legal and factual issues will determine whether all Class Members are entitled to the relief they seek. Among the most important, but not the only, common questions of fact are:

    a. Do the Defendants, individually and/or collectively, have a policy and practice of failing to follow their own rules when denying a person entry into the program?

    b. Do the Defendants, individually and/or collectively, have a policy and practice of collecting money from persons who want to be in the Diversions Program and then failing to return the money if the person is not accepted?

**Typicality – Fed. R. Civ. P. 23(a)(3)**

98.    Among the most important common question of law are:

    a. Does the Fifth Amendment and the Fourteenth Amendment prohibit the Defendants, individually and/or collectively, from accepting money from people who want to be in the Diversions Program?

    b. Does the Fifth Amendment and the Fourteen Amendment prohibit the Defendants, individually and/or collectively, from denying people into the Diversions Program without any particularized basis for the denial?

99.    The named Plaintiff's claims are typical of the other Class Members' claims, and he/she/they has/have the same interests in this case as all other Class Members.

100. Each Class Member is a person whose Fifth and Fourteenth Amendment rights were violated either by paying money and then being denied entry into the program and/or being denied entry without any particularized basis for the denial as required by the Defendant's own rules.

101. The answer to whether the Defendant's actions are unconstitutional will determine the claims of the named Plaintiff and every other Class Member.

102. If the named Plaintiff succeeds in the claim that Defendants' policies and practices concerning violates his or her or their constitutional rights, that ruling will likewise benefit every other Class Member.

### Adequacy — Fed. R. Civ. P. 23(a)(4)

103. The named Plaintiff(s) is/are (an) adequate representative of the Class because his/her/their interest in the vindication of the legal claims that he/she/they raise(s) is entirely aligned with the interests of the other Class Members, who each have the same basic constitutional claims. He/she/they is/are a member of the Class, and his/her/their interests coincide with and are not antagonist to those of the other Class Members.

104. There are no known conflicts of interest among Class Members, all of whom have a similar interest in vindicating their constitutional rights.

105. Plaintiff(s) are represented by Chad Wythers who has experience in litigating complex matters in federal court and extensive knowledge of both the details of Defendants' scheme and the relevant constitutional and statutory law.

106.   Class counsel has a detailed understanding of state law and practices as they relate to federal constitutional requirements.

107.   As a result, counsel has devoted enormous time and resources becoming intimately familiar with Defendants' system and with the relevant state and federal laws.

## Rule 23(b)(2)

108.   Class action status is appropriate because Defendants have acted in the same unconstitutional manner with respect to all Class Members.

109.   The Class therefore seeks declaratory and injunctive relief to enjoin Defendants from continuing to violate the rights of applicants to the Lancaster County Diversions Program.

110.   Because the putative Class challenges Defendants' system as unconstitutional through declaratory and injunctive relief that would apply the same relief to every Class Member, Rule 23(b)(2) certification is appropriate and necessary.

111.   Injunctive relief compelling Defendants to comply with these constitutional rights will similarly protect each Class Member from being subjected to Defendants' unlawful policies and practices. A declaration and injunction will provide relief to every Class Member. Therefore, declaratory and injunctive relief with respect to the Class as a whole is appropriate.

112.   Plaintiff(s) seek the following relief and hereby demand a jury in this cause for all matters so appropriate.

## DAMAGES

113.    As a direct and proximate result of said violation of Plaintiffs' constitutional

and statutory rights, Plaintiff(s) were unlawfully deprived of substantive and

procedural due process and equal protection under the laws, and they

have suffered financial harm, humiliation, embarrassment, mental and

emotional anguish and other harm.

## JURY TRIAL DEMAND

114.    Plaintiff(s) respectfully demand a trial by jury on all counts.

WHEREFORE, Plaintiff(s) prays as follows:

A. That this Court issue an order Declaring the Plaintiff(s) to be

enrolled and admitted into the Diversions Program with all

benefits and rights given to a person who has been accepted into

in the Diversions Program, and/or;

B. That this Court enter an order compelling Defendants to perform

their legal and/or contractual obligations and/or ministerial duties,

to wit: That Plaintiff(s) be admitted into the Diversions Program

with all benefits and rights given to a person who has been

accepted into the Diversions Program, and/or;

C. That this Court enter an ORDER estopping the Defendant's from

denying the Plaintiff(s) entry into the Diversions Program after

she/he/they has/have paid, enrolled and performed nearly all of the requirements of the contract, and/or;

D. That this Court enter an ORDER requiring the Defendants to specifically perform their legal duty, to wit: that Plaintiff be admitted into the Diversions Program with all benefits and rights given to a person who has been accepted into the Diversions Program and/or dismiss the criminal charges considering the Plaintiff has completed all of the requirements of the Diversions Program, and/or;

E. For attorney's fees and costs as permitted by law and in the Court's discretion, and/or;

F. Plaintiffs seek nominal damages in the event Plaintiffs are unable to prove compensatory damages.

G. Plaintiffs seek punitive damages against any defendant for which such relief is legally available.

H. Plaintiffs seek any other relief this Court deems just and proper.

Respectfully submitted,
Michelle Nicklas, Plaintiff.

/s/ Chad J. Wythers
Chad J. Wythers, #22383
BERRY LAW FIRM
2650 North 48th Street
Lincoln, NE 68504
Phone: (402) 466-8444

Fax: (402) 466-1793
Lawyers for Plaintiff(s)



County Attorney's Office

# County Attorney's Office
## Adult PreTrial Diversion

Pre Trial Eligibility Criteria     Waiver of speedy trial and appearance

## Frequently Asked Questions

Q: Where are you located and what are your office hours?
A: Community Corrections, 605 South 10th Street, M-F 8:00 am - 5:00 pm

Q: How do I know if I am eligible for the Diversion Program?
A: Call for information (402-441-3600) or review the eligibility guidelines section on this website

Q: Can I participate in Adult Diversion more than one time?
A: No you may only participate in one adult Diversion program regardless of where it was (any other use of a Diverson program in another State or County will make you ineligible).

Q: Can I participate in Adult Diversion if I already went through Juvenile Diversion?
A: Yes, they are 2 separate programs. The use of a Juvenile Diversion program will not affect your eligibility. Juvenile convictions will not affect eligibility either.

Q: Do I have to hire an attorney to participate in Diversion?
A: No.

Q: How Do I apply for the Diversion Program?
A: Call 402-441-3600 M-F between 8:00 am and 5:00 pm and have your ticket handy when calling.

Q: Do traffic convictions or parking tickets affect my eligibility?
A: No.

Q: If I live in another state or county can my Diversion be transferred there?
A: No. If you got the ticket in Lancaster County you must participate in this program only, although some program requirements can be completed outside of Lincoln with prior approval by Diversion staff.

Q: What are the benefits of completing a Diversion program?
A: If you successfully complete the program, you will not have a conviction on your adult record and you will not face punishment through the court system.

Q: What are typical requirements of the program?
A: Fees, Community Service at an approved non-profit agency, education classes, monthly contact with Diversion case managers, restitution, etc. Requirements depend on many different factors. Call Diversion for more information.

Official site of Lancaster County, Nebraska, USA © Copyright



EXHIBIT
A

Effective January 1, 2013

## LANCASTER COUNTY ADULT DIVERSION PROGRAM
## ELIGIBILITY CRITERIA AND PROGRAM CONDITIONS

GENERAL CRITERIA

Applicants must be charged as an adult in County or District Court. Youthful applicants under jurisdiction of Juvenile Court are not eligible for the Program. Minimum eligibility age is 17 years of age.

Applicants must complete Constitutional Rights Questionnaire and waiver of rights.

No applicant is allowed to enter and participate in adult, pretrial diversion more than one time. Applicants who are unfavorably terminated from pretrial diversion are not eligible to enter the program at any time subsequent.

Prior Criminal Record

Applicants with a prior felony conviction are ineligible. At the discretion of the County/City Attorney, and if otherwise eligible, an applicant may be considered for the Program if he or she has received an official pardon for a previous felony conviction. Applicants with more than two misdemeanor convictions are not eligible for the Program. This would include convictions for class III and class W misdemeanors and above and comparable city ordinances. Expungement or a set aside of a prior conviction does not make a person eligible if otherwise ineligible due to prior conviction record.

Juvenile dispositions are not considered as convictions for purposes of this section.

The County/City Attorney reserves the right to reject applicants previously charged with a felony which was reduced to a misdemeanor.

Applicants charged with a felony will not be considered for Pretrial Diversion unless they apply before the matter is bound over to district court. However Juveniles may apply after their Juvenile transfer hearing.

Eligible Felony Offenses

Acquire Controlled Substance by Fraud
Arson, Third Degree
Burglary
Criminal Mischief
Delivery of a Controlled Substance (Incidental delivery)
Forgery
Fraud by use of a Computer
Insufficient Fund Checks
Insurance Fraud
Manufacturing of Marijuana (Personal use)
Possession of Controlled Substance (Including possession of marijuana weighing more than 1 pound)
Possession of forged instruments/devices
Sales Tax Violation
Theft
Unauthorized Use of Financial Transaction Devices

Ineligible Felony Offenses

Abuse of a Vulnerable Adult
All Assaults involving Officers
Arson First and Second Degree
Assault First and Second Degree
Bribery
Child Abuse
Child Pornography
Defacing a Firearm
Delivery or Possession with Intent to Deliver a Controlled Substance (Including marijuana)
Driving Under the Influence
Enticing a Child with an electronic device
Failure to Appear
False Imprisonment
Gambling
Incest



EXHIBIT
B

Kidnapping
Manslaughter
Manufacturing of Controlled Substances (Except for Marijuana for personal use)
Motor Vehicle Homicide
Murder
Pandering
Perjury
Possession of Deadly Weapon by a Felon
Possession of a Defaced Firearm
Possession of Short Shotgun, Machine Gun or Short Rifle
Possession of a Stolen Firearm
Refusal to Take Chemical Test
Resisting Arrest
Robbery
Sexual Assault
Stalking
Strangulation
Tamper with witness, evidence, jury
Unlawful Possession, Sale of Use of Explosives
Use of Explosives to Commit a Felony or to Kill or Injure Others
Use of a Deadly Weapon to Commit a Felony
Violation of a Protection Order
Violation of Sex Offender Registration Act


Eligible Misdemeanor and Infraction Offenses

Alter Price Tag
Altered Identification
Arson Third Degree
Conceal Merchandise
Criminal Mischief
Disturbing the Peace
Enter Motor Vehicle Without Permission
Failure to Comply
False Statement/Unemployment Benefits
Forgery
Fraud
Fraud by use of Computer
Hinder Arrest (L.M.C. §9.08.020)
Inhaling or Drinking Certain Intoxicating Substances
Inmate Disorderly House
Insufficient Fund Check
Insurance Fraud
Maintain Disorderly House
Minor Attempt to Purchase Alcohol
Minor in Possession Alcohol
Minor Misrepresent Age
Obstruct Government Operations
Physical Contact on Licensed Premises
Possession Drug Paraphernalia
Possession of Marijuana
Possession Stolen Property
Refuse to Comply
Sell Alcohol Without License
Sell Tobacco to Minor
Steal Goods
Theft
Trespass
Unauthorized Use of Financial Transaction Device
Unauthorized Use of Motor Vehicle
Vandalism
Violation of Lottery

Eligible Misdemeanors on a Case-by-Case Basis

Assault
Carry Concealed Weapon
Child Abuse & Neglect
Contribute Delinquency of Minor
Domestic Assault
False Information
Intimidation by Phone
Sexual Assault

Ineligible Misdemeanor Offenses

Accountability & Disclosure Violations
Boating under the influence
Debauching a Minor
Driving Under the Influence
Enticing a Child into a Vehicle
Fleeing to avoid arrest
Gambling
Game Law Violations
Keeping a Place of Prostitution
Motor Vehicle Homicide
Offenses Against or Involving Animals
Pornography
Procuring Alcohol for Minors
Prostitution
Public Indecency
Refusal to Take Chemical Test
Resist Arrest (State statute and L.M.C. §9.08.030)
Traffic Offenses
Violation of Protection Order

Generally, any offense not specifically included herein as an Eligible Offense is not eligible for the Program. The County/City Attorney reserves the right to consider each case on an individual basis to determine eligibility. An offense which constitutes a conspiracy, accessory to felony, attempt, or aiding consummation of a felony where the underlying felony is not an eligible offense is not eligible for the Program.

Applicants are not eligible for Pretrial Diversion if any charges in the complaint are, for any reason, ineligible offenses.

Multiple charges are eligible only if they arise out of one incident involving one victim and all charges are otherwise eligible.

Additional Qualifications as to Offense

Offenses that constitute violations of a position of trust whether public or private are not eligible. This includes any person who stands in a fiduciary relationship to the victim, including a trustee, an attorney or a certified public accountant. Offenses that constitute a violation of a professional duty or licensing rule, regulation, or requirement are not eligible. Examples of individuals who are not eligible include: an attorney who takes from a trust account, a physician or a nurse or other health professional who, because of his/her profession, has access to controlled substances and acquires those substances illegally, a pharmacist who illegally dispenses medication, a person who engages in a profession without a license required by law or during suspension of said license, or a professional who unlawfully prescribes or provides unneeded services. The foregoing are examples of violations of a professional duty or licensing rule, regulation, or requirement and are not intended to be exhaustive of such violations. Public employees whose violation brings into question governmental integrity are not eligible. Violations which constitute consumer fraud or election fraud are not eligible.

"Incidental delivery" for the purposes of delivery of a controlled substance shall mean a delivery of a small amount of marijuana or any controlled substance prescribed to the applicant, with little or no profit to the applicant.

* Delivering the controlled substances to another for no cost is an indicator of an incidental delivery.

* The applicant's "total stock" of the controlled substance, aside from that portion delivered, shall be considered in determining if a delivery was incidental.

* No delivery of a controlled substance to a person under 18 years of age shall be considered an incidental delivery.

* No delivery of a controlled substance shall be considered "incidental" if the controlled substance contributed to the death or serious injury of the person who ingested the substance.

* The number and to whom the deliveries are made will also be considered.

Offenses, including attempts, that involve theft, damage, fraud, forgery, bad checks, criminal mischief or other losses to victims in which the total dollar amount is in excess of $10,000 are not eligible for the Program. No statute of limitations applies to this determination.

## OTHER CRITERIA RELATING TO DIVERSION

### Seriousness of Offense and Established Pattern of Anti-Social Behavior

In addition to the above criteria, each felony and misdemeanor case is considered on a case-by-case basis as to the seriousness of the offense and established pattern of anti-social behavior to determine eligibility.

Factors to be considered to determine seriousness of offense and established pattern of anti-social behavior include, but are not limited to, the following:

- The number of incidents or repeat occurrences;
- Length of time over which offenses occurred;
- Number of victims involved;
- Potential or actual harm to victims even if unintentional;
- Likelihood of further offenses as a result of diversion offense;
- Monetary amount of offense;
- Whether offense involves business or consumer fraud;
- Juvenile record and continuing criminal behavior will likely eliminate an individual as a result of prior convictions;
- Number of prior arrests, citations, police and/or juvenile court referrals for criminal matters;
- Repeated prior offenses of the same nature;
- Prior institutionalization for criminal offenses;
- Length of time between diversion offense and prior offenses;
- Applicant is the subject of an on-going investigation.

### Demonstrated Ties to Community

This section is interpreted liberally in favor of eligibility. The main consideration is whether the applicant is willing and able to meet the minimum reporting requirements and if the person can fulfill program requirements in the area where they reside.

No minimum length of residency in Lancaster County is required.

Felony participants may not transfer outside of direct supervision of Diversion Services during the first four months of the Program without approval.

### Responsibility for offense

To be eligible for the Program, the applicant must acknowledge that the evidence available could likely result in conviction upon prosecution. An applicant's initial or subsequent plea in court is not to be considered for Program eligibility.

The applicant must accept responsibility for the offense to the extent that they agree to comply with all Program terms and conditions.

An applicant may plead not guilty and reserve the right to a trial if not accepted into the Program or if later dropped from the Program.

### Ability to Pay Restitution/Program Fee

Inability to make full restitution for losses due victims or pay program fees does not eliminate an applicant from further consideration. Partial restitution may be waived.

4

Some or all of an applicant's program fee may be waived in the event of extreme financial hardship.

Other Eligibility Guidelines

Applicants with an outstanding warrant are not eligible for diversion.

Any and all pending charges that may effect eligibility must be resolved prior to entering the Program.

Applicants on probation from any court including juvenile court are not eligible.

## PROGRAM TERMS AND CONDITIONS

Typical terms and conditions may include:

*Felony Diversions*

Program term of one year or more but never to exceed 30 months from the date of the offense.

Community Service of 60-100 hours.

Substance abuse evaluation if alcohol or drugs involved in offense and follow treatment recommendations.

Extended drug education program of 10 hours.

Controlled substance diversions agree to search and seizure of residence, vehicles, and person without warrant by authorized law enforcement personnel upon advance approval of County Attorney.

Written or verbal apology to victims at discretion of Program.

Controlled substance cases must submit to a urinalysis within 24 hours of request by Program and pay for testing.

There will be no extensions of the program terms without approval from the County Attorney's Office.

*Misdemeanor Diversions*

Six month to one year terms depending on the offense, restitution and other factors.

One year term for all crimes against the person unless waived by administrator.

Written or verbal apology to victims at discretion of Program.

Controlled substance diversions must agree to search and seizure of person, vehicles, personal property and residence without warrant by law enforcement personnel upon advance approval of County/City Attorney.

Additional community service hours may be required for individuals who are unable to pay civil damages.

Substance abuse evaluations if drugs or alcohol involved in offense and follow treatment recommendations.

Community Service of 24-100 hours depending on seriousness of offense unless waived by Program personnel.

There will be no extensions of the program terms without approval from the County/City Attorney's Office.

## ADMINISTRATIVE REVIEW GUIDELINES

Applicants that are otherwise eligible who are denied the Program will be notified in writing by either the County/City Attorney, or DIVERSION SERVICES of the decision and the reasons for denial.

The applicant or his attorney must file written notice with the County/City Attorney and DIVERSION SERVICES to request an administrative review of the decision. The County/City Attorney will schedule a hearing within three weeks of the request.

Administrative reviews are heard by local attorneys in private practice who have been appointed as hearing officers by the Lincoln Bar Association and have volunteered their services.

From:402 441 3604                                    07/18/2017 15:43      #468 P.002/004

County

## Community Corrections Diversion Program Agreement

I, Michelle Nicklas, may be prosecuted for the following misdemeanor criminal offense(s):

    Child Neglect

I have read and signed a Constitutional Rights Questionnaire. To earn a dismissal of the above charges I agree to do the following if accepted into the Program:

    Obey all local, state and federal laws. Conviction on new charges will result in termination.

    Maintain residence in Nebraska unless approved by the Program and obtain approval for travel outside the area if trip exceeds seven days.

    Meet with a staff member as requested. Loss of monthly contact could result in termination.

    Keep Community Corrections Diversion Services advised at all times of current mailing address, residence, telephone, employment, school and all program conditions.

    Notify Community Corrections Diversion Services within 48 hours of any arrests, citations, (tickets) and court appearances.

    Pay a program fee of $200 in monthly payments of $40 beginning June.This must be paid by cash, money order or card. All payments made by debit or credit card will be charged a processing fee.

    Program fees are not refundable for any reason. An extension fee will be charged if program term has to be extended more than 30 days.

    Must attend any pending court dates and pay all court costs.

    Complete 24 hours of community service.

    Complete Extended Drug/Alcohol education

    Complete Parenting class

I understand that I am not required to attend any class, group or other service offered by Community Corrections Diversion Services. I may obtain these services from another approved source if I so choose.

I agree to abide by this agreement from 5/23/17 to 11/23/17. The term of this agreement may be extended only if approved by Community Corrections Diversion Services. This Agreement may not be changed or amended without approval of Community Corrections Diversion Services. Any changes will be added to the original copy of this agreement, initialed and dated by client.

I understand that the Program is voluntary and that I may withdraw at any time. If I abide by the Program conditions, criminal charges will not be refiled for the above offense(s). Failure to complete all program conditions will result in termination from the Program and prosecution.

If arrested or cited for a criminal offense alleged to have occurred after 5/23/17, I will not be able to complete the Program until the charges have been resolved. I will be terminated from the Program upon conviction or bound over to District Court if charged with a felony. The prosecutor also reserves the right to terminate me from the Program if any new charges remain pending for 60 days without disposition.

I have read and understand all terms and conditions of this Program Agreement. I agree to abide by this Agreement to earn a dismissal of charges.

Client _Michelle Nicklas_____    Date 5/23/17

Community Corrections Diversion Services_____    Date 5/23/17

County/City Attorney_____    Date ___/___/___

DOB: 12/4/85                SF187014                CR17-5489



The decision of the Hearing officer is advisory and is not binding on the County/City Attorney. The purpose of the hearing is limited to determining whether the County/City Attorney's decision was arbitrary and capricious.

Attorneys requesting hearings are asked to contact Diversion Services and request a copy of the rules of procedure for the Administrative Hearings at the same time they request an Administrative Review.

#### Confidentiality

Any criminal justice record information which pertains to anyone who is being screened or has been accepted into the Program or who has been in the Program at any time in the past, will be made available to the public in accordance with the Security, Privacy, and Dissemination of Criminal History Information Act found at Neb. Rev. Stat. §29-3501, et. al. This includes the following information:

Name of Applicant
Date of Arrest
Intake Date
Charges Filed in Court
Court Disposition
Program Recommendation to Prosecutor
County/City Attorney's Decision and Date
Program Outcome Status

The Program routinely provides this information to the appropriate criminal justice agencies to ensure that all criminal record information applicable to Program participants is accurate and complete.

All other information, except as provided below, that relates to the individual participant is considered to be confidential and will not be divulged to the general public unless the participant expressly authorizes release of otherwise confidential information. Information recorded on the following Program forms and reports will be considered confidential:

Constitutional Rights Questionnaire
Intake Form
Acceptance/Rejection Report
Termination/Completion Report
Client case notes

Any person who participates in Pre-Trial Diversion waives any right to confidentiality with respect to the Program Agreement which sets forth the conditions of the Program.

Information received from participants or other persons that pertains to matters of child abuse, bodily harm or life-threatening circumstances will not be held in confidence. Also, if information becomes known to Program personnel that a participant is currently involved in criminal acts, or intends to do so at some future time, it will be reported to the County/City Attorney. All staff members are expected to report incidents of this nature to the County/City Attorney for whatever action deemed appropriate by that office.

#### Unfavorable Termination

The County/City Attorney shall not dismiss a case until the participant has paid all cost associated with entry into the program.

Participants may be unfavorably terminated from the Program for noncompliance with the conditions stated in individual program agreements. Participants are expected to fulfill all contract terms. Specific conditions on the program agreement may not be modified without prior approval by the Program.

Except as otherwise provided above, no one will be terminated without due process. If a participant fails to initiate action or make adequate progress on his or her contract, the counselor will schedule a Staffing with the Director for the purpose of giving formal notice to the person that he or she is being considered for unfavorable termination. No one will be terminated without a Staffing and given an opportunity to complete the Program. The only exception to this policy is when someone has been convicted of a new in-program offense committed before a Staffing can be held and does not deny the offense. Participants who do not attend the Staffing due to loss of contact also will be terminated without being present at this hearing.

At the hearing, specific conditions and deadlines will be established for the person to demonstrate that he intends to fulfill his program agreement obligations. These conditions will be provided to the person by letter within one week of the Staffing. If the person fails to adhere to the conditions specified at the Staffing, notification will be made by letter to the last known address that they are being recommended for termination.

Any Diversion Program participant who wishes to contest or dispute the reasons for their termination must request a Fact Hearing within 10 days after receipt of the notice of termination. The sole purpose of a Fact Hearing is for the person to provide evidence or other information that he or she has complied with the conditions established at the Staffing.

6

Any participant convicted on a new offense committed after the date of intake for the diversion offense will be automatically terminated. Furthermore, any participant who is convicted of an offense committed prior to the date of intake, will be automatically terminated if that conviction would have made them ineligible for the program.

An individual may also be terminated from the Program at the discretion of the County/City Attorney if in-program charges are pending more than 60 days or if bound over to District Court for arraignment on felony charges.

Restitution

Participants will be required to make fair restitution to all victims of their offenses whenever possible. It is recognized that in some circumstances, the defendant is unable to repay the full amount of losses incurred due to the diversion offense. No one shall be denied the Program solely on his or her inability to make financial restitution. Partial restitution may be required but payment plans shall not extend beyond the term of the program participation.

It is the responsibility of the Program counselors to determine the amount of losses and to arrange for an appropriate repayment schedule. In the event a determination cannot readily be made as to the amount of restitution due, the County/City Attorney assigned as liaison to the Program will review the available information and decide upon an amount to be repaid to satisfy the conditions of participation.

To determine the amount of restitution due, these factors will be considered: (1) the amount of loss specified in law enforcement agency reports; (2) the amount of loss provable in court or established in a civil action for damages and (3) the amounts admitted to by the defendants;

In the event of multiple defendants, each shall be required to pay equal shares, regardless of the distribution of proceeds or amount of damage done, unless the defendants mutually agree to other arrangements.

Damages sustained to property are included in restitution requirements.

Storage costs and rewards, as a general policy, will not be included in restitution amount to be paid.

The Program will solicit from victims a statement of losses incurred as a result of the diversion offense, unless the police reports clearly indicate that all property and other proceeds obtained by the defendants have been returned to the victim(s).

If losses are covered by insurance, payments will be made first to the victim for any deductible paid, and second to the insurance company that paid the claim.

The Program reserves the right to request two estimates for repairs and/or losses if, in the counselor's judgment, the amount of loss claimed is believed to be excessive or if there is a substantial disparity between the defendants and the victim(s) as to the amount of loss.

For information contact:
    Community Corrections
    605 South 10th Street
    Lincoln, NE 68508
    (402)441-3600

Effective January 1, 2013

## Chad J. Wythers

| | |
|---|---|
| **From:** | Jeremy P. Lavene <JLavene@lancaster.ne.gov> |
| **Sent:** | Thursday, May 25, 2017 9:30 AM |
| **To:** | Chad J. Wythers |
| **Subject:** | Michelle Nicklas, CR17-5489 |
| **Attachments:** | Diversion Denial Letter.pdf |

Chad,
The county attorney's office is denying diversion to Ms. Nicklas. Please see the attached letter.
Thanks,
Jeremy

CONFIDENTIALITY NOTICE: This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.

1





**JOE KELLY**
LANCASTER COUNTY ATTORNEY

www.lancaster.ne.gov/attorney

05/25/2017

Chad J. Wythers
Attorney at Law
2650 N. 48th Street
Lincoln, NE 68504

     RE:   State vs. Michelle M. Nicklas, CCT - CR17-5489

Dear Mr. Wythers:

The application of Ms. Nicklas to enter the Lancaster County Community Corrections Pre-Trial
Diversion Program has been denied. The charges alleged are reviewed for eligibility
case-by-case, and it is the decision of our office that the alleged facts make this case
inappropriate for the diversion program.

You have the right to appeal this decision. If you wish to file an appeal, you must send written
notice to the Deputy County Attorney handling this case, and to Diversion Services to request an
administrative review of the decision. The County Attorney will schedule a hearing within three
weeks of your request. Administrative reviews are heard by local attorneys in private practice
who have been appointed as hearing officers by the Lincoln Bar Association and who have
volunteered their services. Please note that the decision of the hearing officer is advisory and is
not binding on the County Attorney. The purpose of the hearing is limited to determining
whether the County Attorney's decision was arbitrary and capricious.

If you have any questions, please feel free to contact me regarding this case.

Sincerely,

JOE KELLY
LANCASTER COUNTY ATTORNEY

Jeremy P. Lavene
Deputy County Attorney

From:402 441 3604

07/18/2017 15:43    #466 P.003/004

**LANCASTER COUNTY**
**DEPARTMENT OF**    Etherton, M.A., Director
**Community Corrections**    402-441-3600
    fax: 402-441-3604
PROVIDING ALTERNATIVES TO INCARCERATION

**Name of Volunteer:** Michelle Nickles

**Name of Organization:** Berean Church - Vacation Bible School

**Address of Organization:** 6400 S. 70th St.
    **City:** Lincoln    **State:** NE    **Zip:** 68516

**Phone Number for Organization:** (402) 483-4512

## VERIFICATION OF COMMUNITY SERVICE HOURS FOR DIVERSION SERVICES

| Date | Time In | Time Out | Hours Worked | |
|------|---------|----------|--------------|---|
| 6/22/17 | 1:00 pm | 2:15 pm | 1.25 | |
| 6/26/17 | 1:00 pm | 4:15 pm | 3.25 | |
| 6/28/17 | 1:00 pm | 4:30 pm | 3.5 | |
| 6/29/17 | 1:00 pm | 3:45 pm | 2.75 | |
| 6/30/17 | 1:00 pm | 4:30 pm | 3.5 | |
| 7/5/17 | 1:00 pm | 3:15 pm | 2.25 | |
| 7/8/17 | 9:00 am | 1:00 pm | 4 | |
| 7/9/17 | 1:00 pm | 3:45 pm | 2.75 | 22.25 |
| 7/14/17 | 12:30 pm | 3:00 pm | 2.5 | |
| | | | | |

**Total hours completed for Diversion Services:** 25.75

**Signature of volunteer:** Michelle Nickles

**Name of employee verifying hours:** Jessica L. Schmidt

**Signature of employee verifying hours:** Jessica J. Schmidt

PRETRIAL RELEASE, HOUSE ARREST, COMMUNITY & DIVERSION SERVICES
633 South 9th Street, Lincoln, NE 68508, 402-441-3600
ADULT DRUG COURT, 555 S. 9th Street, Lincoln, NE 68508, 402-441-3612



EXHIBIT
F

  
From:402 441 3604                                           07/18/2017 15:44      #468 P.004/004



**matt talbot**
kitchen & outreach

2121 N. 27th St.
Lincoln, Ne 68501
P.402.477.4116, 402-817-0614
Alanna L. Huise, PLADC
Substance Abuse Counselor

Diversion Services
Department of Community Corrections
633 South 9th St.
Lincoln, NE. 68508
Ph: 402-441-1943
FAX: 402-441-3602

ATTN: Sarah Knudson

Dear Sarah,

On June 24th & 25th, 2017, Michelle Nicklas completed our 15 hour alcohol and drug education class. She was attentive and participated appropriately. Please feel free to call with any questions.

Thank you,

Alanna L. Huise, PLADC

Alanna L. Huise, PLADC, 6.25.2017
Substance Abuse Counselor



EXHIBIT

F